[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Connecticut Bank of Commerce (hereafter Bank), instituted this action against Jordan R. Dann (a/k/a Robert J. Dann) and Judith L. Dann (hereafter Danns); Amity Bank n/k/a The Connecticut Bank of Commerce; and the United States of America, seeking a strict foreclosure on property in the possession of the Danns, as well as other equitable remedies. The complaint alleges the following facts.[1]
This action arises out of two commercial revolving note and loan agreements (notes) executed by the Danns in favor of Amity Bank n/k/a the Connecticut Bank of Commerce in December, 1988 and July, 1989, which notes are secured by two mortgages on premises located at 166 Lounsbury Road, Ridgefield, Connecticut. The notes total the sum of $1,050,000. Both were in default by November, 1989 and, despite demand, payment has not been made.
On August 30, 1991, the Danns filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Connecticut seeking a reorganization. On April 27, 1994, the Bankruptcy Court, Shiff, J., entered an order confirming the Danns' Chapter 11 Plan of Reorganization (Plan). According to the Plan, the amount of the debt was reduced to $850,000. The Plan further provided that in all other respects, the mortgages on file shall remain in full force and effect without modification except as stated herein. The Bank alleges that despite demand, the Danns have not made any payments in accordance with the terms of the confirmed reorganization plan approved by the Bankruptcy Court and, accordingly, seeks strict foreclosure of the premises.
On August 11, 1995, the Danns filed a revised answer to the complaint and asserted three special defenses and two counterclaims. In their first special defense, the Danns assert that both mortgages are unenforceable pursuant to Sec. 49-4b of CT Page 4054-I the General Statutes[2] "in that [an entity known as] Connecticut Yankee Holdings, Inc., was the primary obligor with the Defendants as accommodation makers secondarily liable for said debt[,] and said notes were revolving notes which contemplated future advances which are not set forth or reflected in said mortgages as open-end mortgages."
In their second special defense, the Danns allege that requiring Judith Dann to execute the mortgages and notes "constitutes a violation of 15 U.S.C. § 1961 and12 C.F.R. § 202.7 (d) as well as Connecticut General Statutes Section 46a-66. . . ." Finally, in their third special defense, the Danns assert that they are not liable for any deficiency judgment that might ensue "as said note was discharged in their previous Chapter 11."
The Bank has filed a motion for summary judgment[3] on the complaint and the two counterclaims advanced by the Danns, arguing that the three special defenses asserted by the Danns are insufficient as a matter of law. It claims that the Danns are precluded from raising the issues presented in the first two special defenses because of the doctrine of res judicata. It argues that because the Danns failed to raise those issues in the Chapter 11 proceeding, they are precluded from raising them now. In addition, the Bank argues that the Danns' third special defense is insufficient as a matter of law because a debt which is reorganized and modified in a Chapter 11 Plan of Reorganization is not discharged under applicable bankruptcy law.
The Danns argue that Naugatuck Savings Bank v. Fiorenzi,232 Conn. 294, which held that compliance with Sec. 49-4b of the General Statutes was mandatory, requires the denial of the Bank's motion for summary judgment. They continue by claiming that notwithstanding the plaintiff's assertion that the confirmation of the Chapter 11 plan precluded the defendants from asserting defenses of matters known or knowable, the simple fact is that the Supreme Court's decision that occurred after the confirmation could not be known or knowable. They recite that they cannot be precluded from asserting the special defense of non-compliance with Sec. 49-4b since waiver of the right to raise the defense is an issue of fact precluding summary judgment.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WilsonCT Page 4054-Jv. New Haven, 213 Conn. 277, 279; Masotti v. Bristol SavingsBank, 43 Conn. Sup. 360, 361, aff'd, 232 Conn. 172.
"Summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202; Practice Book Sec. 384.
The burden is on the movant to show that "it is clear what the truth is and that it excludes any real doubt as to the existence of any genuine issue of material fact." Gold v.Connecticut Home Therapeutics, Inc., 37 Conn. App. 852, 854-855. "[T]he opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v.Kissner, 229 Conn. 213, 217.
As a preliminary matter, the court notes the exceptional memorandum of law submitted by the Bank, which clearly and cogently sets forth the factual scenario and the relevant issues of law in this case. It argues that the Danns' three special defenses are legally insufficient and that it is therefore entitled to judgment on the complaint. In addition, the Bank argues that it is entitled to judgment on the Danns' two counterclaims.
A. Defendants' First Special Defense
1. Res Judicata
The Bank asserts that the Danns are barred from litigating the allegations contained in the first tWO special defenses since those issues could have been raised in the Bankruptcy Court proceeding, but were not. It relies on Sure-Snap Corp. v. StateStreet Bank, 948 F.2d 869 (2d Cir. 1991), for this proposition.
In Sure-Snap, the Second Circuit held that claims against creditors which could have been brought in that full and fair proceeding, and whose timely bringing may have affected the parameters of a bankruptcy repayment schedule, cannot be relitigated another day in another court. In so holding, the court employed a two-step analysis; first, the court determined whether the two causes of action were substantially the same and, second, determined whether allowing the debtor a separate judgment on the merits of its claims would impair the CT Page 4054-K enforceability or effectiveness of the original reorganizational plan.[4]
As to the similarity of claims in the two proceedings, the court in Sure-Snap noted that the bankruptcy proceeding encompassed all matters that Sure-Snap or its creditors might have raised to advance their interest, including not just the creditors' proofs of claim, but Sure-Snap's petition for protection from its creditors. (Emphasis in original.) The court further remarked that "appellants' failure to raise these claims (if valid) when they should have, almost certainly affected that prior judgment. Had the bankruptcy court found merit in appellants' lender liability claims, it probably would have structured a different disposition of Sure-Snap's assets or schedule of payments." Sure-Snap Corp. v. State Street Bank,
supra, 876.
In that case, as in this, the allegations in the Danns' first two special defenses, if true, would in all probability have affected the confirmation order issued by the Bankruptcy Court. Specifically, the Danns' claims that the Bank violated Sec. 49-4b
of the General Statutes, 15 U.S.C. § 1961 and 12 C.F.R. § 202.7 (d) and Sec. 46a-66 of the General Statutes would certainly have affected whether the Danns were even liable on the notes and mortgages held by the Bank. The claims raised by the Danns in their first and second special defenses could have been raised in the bankruptcy proceeding and, accordingly, are barred by the doctrine of res judicata.
The Danns argue, however, that their first special defense is not barred by res judicata since compliance with Sec. 49-4b of the General Statutes was not mandatory until the Supreme Court's recent decision in Naugatuck Savings Bank v. Fiorenzi, 232 Conn. 294. Since Fiorenzi was not decided until after the Chapter 11 Reorganization Plan was confirmed, they argue that they are free now to raise the Bank's noncompliance with that statute. Since their position, if meritorious, would preclude the application of the res judicata doctrine to the first special defense, the court must examine the applicability or nonapplicability of Sec. 49-4b
to the mortgages in this case.
2. Applicability of General Statutes, Sec. 49-4b
The Bank argues that the requirements of Sec. 49-4b do not apply to the mortgages in this case since the Danns are primarily CT Page 4054-L obligated parties and, by its terms, Sec. 49-4b applies only to secondarily obligated parties. Additionally, it asserts that even if Sec. 49-4b does apply to these mortgages, all Fiorenzi
requires is substantial compliance with the statute.[5]
If Sec. 49-4b applies to the mortgages in this case, does there exist a genuine issue of material fact as to whether the Bank complied with the requirements of Sec. 49-4b of the General Statutes? That statute provides, in relevant part:
 "(a) If an open-end mortgage meets the requirements of this section, such mortgage shall secure the obligation of any person who is secondarily liable for an open-end loan. . . ."
(Emphasis added.)
The Bank argues that because the Danns are comakers of both the notes and mortgages, they are liable as primarily obligated parties, not secondarily liable. It continues that the requirements of Sec. 49-4b do not apply to the mortgages at issue herein. The Bank's position is meritorious, and the requirements of Sec. 49-4b do not apply to the mortgages in this case.
The first note provides, in part: "FOR VALUE RECEIVED, the undersigned (BORROWER(S)) jointly and severally promises [sic] to pay ON DEMAND to the order of Amity Bank . . . the principal sum of SIX HUNDRED FIFTY THOUSAND ($650,000.00) DOLLARS . . . ." (Emphasis added.) At the bottom of this note there is a signature line for "Connecticut Yankee Holdings, Inc., By Frank A. Zarro, Jr., its President, hereunto duly authorized." This signature line is blank. Below that there is a signature line for Robert J. Dann, which is also blank.[6] At the top of the next page there is a signature line for Judith L. Dann, Frank A. Zarro, Jr., and Helaine F. Zarro, Jr., [sic] each of which contains the signature of the respective parties.
The second note provides, in part: "FOR VALUE RECEIVED, Connecticut Yankee Companies, Inc.,[7] acting herein by Frank A. Zarro, Jr., its President, Jordan R. Dann, Judith L. Dann, Frank A. Zarro, Jr., and Helaine A. Zarro, jointly and severally
(collectively referred to as "Maker") . . . promise to pay to the order of Amity Bank . . . the principal sum of FOUR HUNDRED THOUSAND AND 00/100 . . . DOLLARS . . . ." (Emphasis added.) The same five signature lines appear at the bottom of the second note; however, the signatures of all five respective parties CT Page 4054-M appear on the second note.
The first mortgage, attached to the Bank's complaint, as well as its amended complaint, states, in part: "Robert J. and Judith L. Dann, of 166 Lounsbury Road, Ridgefield, CT ("BORROWER(S)"), to secure payment of SIX HUNDRED FIFTY THOUSAND ($650,000.00) DOLLARS with interest payable as provided in a certain promissory note dated December 12, 1988 . . . a copy of which Note is attached hereto and made a part hereof, grant(s) to Amity Bank ("LENDER"), with MORTGAGE COVENANTS the real property described on Schedule A ("Property")."
The second mortgage, attached to the Bank's complaint and amended complaint states, in part: "Jordan R. Dann and Judith L. Dann, both of 166 Lounsbury Road, Ridgefield, CT ("BORROWER(S)"), to secure payment of FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS with interest payable as provided in a certain promissory note dated July 21, 1989 . . . a copy of which Note is attached hereto and made a part hereof, grant(s) to Amity Bank ("LENDER"), with MORTGAGE COVENANTS the real property described on Schedule A ("Property")."
On the strength of the above-described instruments, the court finds the Danns are primarily liable on the notes and mortgages. The notes clearly provide that the signatories are "jointly and severally" liable on the instruments. Although the Danns do not argue in their memorandum of law that they signed the instruments in some capacity for Connecticut Yankee Holdings, such an argument would not be supported by the evidence.
The fact that there were five signature lines — Connecticut Yankee Holdings "By Frank A. Zarro, Jr., its President," and one for Robert J. Dann (and Jordan R. Dann on the second note), Judith L. Dann, Frank A. Zarro, Jr., and Helaine F. Zarro — clearly indicates that there were five parties to the agreement: Connecticut Yankee Holdings and the four individuals who signed jointly and severally. If this were not the case, there would have been no reason for Frank A. Zarro, Jr. to sign the instrument twice, once as president of Connecticut Yankee Holdings and once in his individual capacity. Therefore, it seems clear that the Danns signed the instruments in their individual capacities and are primarily liable. The provisions of Sec. 49-4b
do not apply to these mortgages. Since Sec. 49-4b does not apply to the instruments herein, the Danns' first special defense alleging noncompliance with that section is legally insufficient. CT Page 4054-N
B. Defendants' Second Special Defense
The Bank argues that the second special defense is barred by res judicata. The Danns do not address the doctrine of res judicata in their two-page memorandum, choosing instead to focus solely on their Sec. 49-4b argument. Based on the discussion of res judicata and the Second Circuit's decision in Sure-Snap, set forth above, the allegations contained in the Danns' second special defense are barred by res judicata since those claim could have been raised in the bankruptcy proceeding.
C. Defendants' Third Special Defense
In their third special defense, the Danns assert that they are not liable for any deficiency judgment that might ensue "as said note was discharged in their previous Chapter 11." The Bank argues that this defense is insufficient as a matter of law because the reorganization plan confirmed by the Bankruptcy Court did not discharge the Danns' indebtedness. It notes the language in the Plan which states: "In all other respects, the mortgages on file shall remain in full force and effect without modification except as stated herein." The Bank argues, therefore, that the recourse nature of the mortgages remains in effect, not having been modified in any way by the Plan. The Danns do not address this argument in their memorandum.
A Chapter 11 plan of reorganization discharges prior debts of the debtor to the extent such prior debts are not addressed in the plan. 11 U.S.C.S. § 1141(d)(1). Since the Chapter 11 Plan for the Danns specifically dealt with the mortgages (and notes incorporated therein) at issue here, their liability on those instruments was not discharged. In addition, since the Plan only modifies the mortgage instruments by reducing the amount of the debt — evidenced by the language "[i]n all other respects, the mortgages on file shall remain in full force and effect without modification except as stated herein" — it seems clear that the recourse nature of the mortgages remains in effect. The Danns' third special defense is insufficient as a matter of law.
D. Defendants' Counterclaims
The Danns' two counterclaims are based on the same allegations in the second special defense; namely, that the Bank CT Page 4054-O violated Sec. 46a-66 and discriminated against Judith Dann, constituting a violation of CUTPA, our Connecticut Unfair Trade Practices Act.
Since the Danns are barred from litigating the issues in the second special defense because those allegations could have been raised in the bankruptcy proceedings, the counterclaim, "predicated upon the allegations of the . . . [special defense] must, of necessity, be held to be fatally flawed." ClearheartConstruction Co. v. Charles Daniels Service, Superior Court, judicial district of Danbury, Docket No. 31 41 77 (July 14, 1994, Moraghan, J.).
A motion for summary judgment can be used to test the legal sufficiency of the allegations of a counterclaim; Practice Book Sec. 379; the court hereby enters judgment in favor of the Bank on the Danns' two counterclaims. There are no genuine issues of material fact and the Bank is entitled to judgment as a matter of law. Accordingly, the Bank's motion for summary judgment on the complaint is granted and judgment may also enter against the defendants on their counterclaims.
Moraghan, J.